IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBERT STEINBUCH                                                                                 PLAINTIFF

v.                              No. 4-08-CV-000456 JLH

HACHETTE BOOK GROUP                                        DEFENDANT

## BRIEF IN SUPPORT OF DEFENDANT HACHETTE BOOK GROUP'S MOTION TO DISMISS

## I. INTRODUCTION

The plaintiff Robert Steinbuch, acting pro se,[1] has filed a fourth lawsuit,[2] this time against Hachette Book Group ("Hachette"), the distributor of *The Washingtonienne* (the "Book"), a work of fiction. As a distributor, Hachette had no input into or knowledge of the contents of the book and cannot be held liable as a matter of law. There is no good cause for this lawsuit; it was filed only to harass and annoy a business whose connection to the content of the Book is highly attenuated. The plaintiff's complaint should be dismissed in its entirety.

---

[1] The plaintiff is a law professor at the University of Arkansas at Little Rock School of Law. *See Steinbuch v. Cutler*, 518 F.3d 580, 583 (8th Cir. 2008).

[2] *See Steinbuch v. Cutler*, No. CIV.A.05-0970(PLF), 2006 WL 979311 (D.D.C. Apr. 14, 2006) (Friedman, J.) (complaint filed May 16, 2005); *Steinbuch v. Cutler*, No. 4:06CV00620-WRW, 2007 WL 486626 (E.D. Ark. Feb. 7, 2007), *rev'd in part, aff'd in part*, 518 F.3d 580 (8th Cir. 2008), *cert. denied sub nom. Steinbuch v. Hyperion Books*, No. 08-52, ___ S. Ct. ___, 2008 WL 2753143 (U.S. Oct 6, 2008); Complaint for Determination of Non-Dischargeability, Docket No. 10, *Steinbuch v. Cutler (In re Jessica Cutler)*, No. 07-50064-5 (Bankr. N.D.N.Y.) (filed Sept. 4, 2007).

As this brief will demonstrate, there are two reasons why this Court should dismiss the plaintiff's complaint with prejudice as a matter of law. First, the plaintiff cannot state a claim based on the content of the Book against a mere distributor of the Book. Second, the complaint fails to state a claim for any of the causes of action it asserts.

## II. RULE 12(b)(6) STANDARD

Dismissal is proper when a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint must have more than labels, conclusory statements, or a formulaic recitation of the elements of the cause of action. *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). The information in the complaint must be enough to provide grounds to support the claim and "to raise the right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). Rule 12(b)(6) dismissal is appropriate where the allegations show that there is an "insuperable bar to relief." *Benton*, 524 F.3d at 870. No leave to amend should be granted if the proposed amendment would be futile. *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1068 (8th Cir. 2004).

On a Rule 12(b)(6) motion, the court may consider "materials that are part of the public record or do not contradict the complaint." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). For example, a court may rely on a transcript of proceedings before another district judge. *Id.* Therefore it is

appropriate for this Court to consider matters contained in the publicly available records of the plaintiff's various federal lawsuits.

### III. THE COMPLAINT DOES NOT STATE A CLAIM BECAUSE HACHETTE IS ONLY A DISTRIBUTOR OF THE BOOK

The complaint describes Hachette as engaging in the actions of "publication, commercialization, and/or distribution of the [B]ook," Complaint ¶¶ 2, 20, 28, 33-35, 38, in a conclusory fashion without allegations of fact. The Eighth Circuit has recognized, in plaintiff's lawsuit against the Book's publisher, that Hachette is only the distributor of the Book and that Hyperion is the publisher.[3] *Steinbuch v. Cutler*, 518 F.3d 580, 584 (8th Cir. 2008), *cert. denied sub nom. Steinbuch v. Hyperion Books*, No. 08-52, ___ S. Ct. ___, 2008 WL 2753143 (U.S. Oct. 6, 2008). As shown below, the complaint is insufficient on its face because it does not contain any allegations that would give rise to a duty on Hachette's part to investigate the content of the Book.

Under the law of defamation and related torts, there are three categories of participants in the distribution of written materials: (1) primary publishers; (2) secondary publishers or disseminators; and (3) suppliers of equipment and facilities who are not publishers at all. W. PAGE KEETON ET AL., PROSSER AND

---

[3] In partially remanding the plaintiff's first Arkansas lawsuit, the Eighth Circuit relied heavily on Hyperion's retention of a distributor as possible grounds for Arkansas to have personal jurisdiction over Hyperion. *Id.* at 588. Moreover, in a filing before the United States Supreme Court, even the plaintiff refers to the defendant in this lawsuit as the "distributor" of the Book. *See* Petition for Writ of Certiorari at 4-6, 2008 WL 2744317, *Steinbuch v. Hyperion Books*, No. 08-52, *cert. denied*, 2008 WL 2753143 (U.S. Oct. 6, 2008).

-3-

KEETON ON THE LAW OF TORTS § 113 at 803 (5th ed. 1984). Secondary publishers and disseminators include libraries, news vendors, distributors, and carriers. *Id.* at 810. Those who perform a secondary role are not subject to liability without proof that they knew or had reason to know of the existence of libelous matter in the publication. *Id.* As such, a distributor of books may not be held liable unless the plaintiff can allege facts that show that the distributor knows or has reason to know the allegedly defamatory nature of the matter disseminated. *Id.*

As a general rule, a distributor does not have any direct involvement in the preparation or production of an allegedly libelous article, lacks any control or responsibility for the content, has no editorial or reporting staff, and lacks the ability to investigate or consider the potentially defamatory nature of the books it distributes for others. *Lewis v. Time, Inc.*, 83 F.R.D. 455, 465 (E.D. Cal. 1979). "Accordingly, the danger of self-censorship is more threatening than it is with the original publisher, since without such resources the distributor has all the more reason to be cautious." *Id.* Because a distributor carries a wide variety of publications, self-censorship of a distributor would result in pervasive consequences. *Id.* Out of an abundance of caution, some distributors would likely stop selling certain categories of artistic products to avoid liability. *Boladian v. UMG Recordings, Inc.*, 123 Fed. Appx. 165, 169 (6th Cir. 2005).

Thus, there is no "conduit liability" without fault. *Auvil v. CBS "60 Minutes,"* 800 F. Supp. 928, 931 (E.D. Wash. 1992); RESTATEMENT (SECOND) OF TORTS § 581(1) (1977) ("[O]ne who only delivers or transmits defamatory matter

published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character."). The *Restatement* standard is rooted in the right to distribute written materials, which is at the heart of the First Amendment. *Lewis*, 83 F.R.D. at 464. In *Lewis*, the court held that a complaint against Lucky Stores, Inc., a distributor of Time Magazine, was insufficient on its face to state claims of libel, slander, invasion of privacy, and intentional infliction of emotional distress. *Id.* at 457, 465. As a matter of law, a distributor who has no direct involvement in the preparation or production of an allegedly libelous article cannot be held liable for the contents of the publication. *See id.* at 465. The *Lewis* court explained:

> Because of the special role the distributor plays, it is, if anything, even more critical to dispose of meritless cases at the outset. The requirement of specific allegations of facts concerning actual knowledge or facts giving rise to a duty to investigate protects the distributor from meritless cases at the outset. If a distributor can ever bear the burden of liability for libel, such detailed allegations must be required in order to insure the unrestricted distribution of newspapers and magazines which is at the heart of the First Amendment.

*Id.*

Similarly, in *Auvil v. CBS "60 Minutes,"* the court dismissed with prejudice libel claims against local stations for broadcasting alleged defamatory content on the CBS *60 Minutes* program. 800 F. Supp. 928, 931 (E.D. Wash. 1992). The court held that the local stations were mere conduits for the programming and that "it was unrealistic," for them to maintain "full time editorial boards . . . which possess sufficient knowledge, legal acumen and access to experts" to monitor the

programs they distribute or face expensive lawsuits "at every turn." 800 F. Supp., at 931-932 (citing and following book publishing cases); *see also Dworkin v. Hustler Magazine, Inc.*, 634 F. Supp. 727, 729 (D. Wyo. 1986) (dismissing libel claim against magazine distributor); *In re Medical Lab. Mgmt. Consultants v. American Broad. Cos., Inc.*, 931 F. Supp. 1487, 1492 (D. Ariz. 1996) (granting motion to dismiss where local station played no part in the production or editing of a network program and, as a mere conduit, could not be held liable for intentional or negligent conduct associated with the network broadcast); *Austin v. CrystalTech Web Hosting*, 125 P.3d 389, 392 (Ariz. Ct. App. 2005) (applying distributor immunity to Internet website hosting service in case governed by section 231(c) of the Communications Decency Act of 1996).

The complaint contains no factual allegations that Hachette did anything more than distribute the Book that allegedly caused the plaintiff harm. There is no specific factual allegation that Hachette authored, edited, published or had any knowledge of the contents of the Book or that there were any circumstances that would impose a duty on Hachette to investigate its contents. Consequently, the plaintiff's claims against Hachette should be dismissed with prejudice.

### IV. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As explained above, the complaint against Hachette should be dismissed because, as a distributor, Hachette had no duty to ascertain whether the Book had a potentially tortious character. For this reason alone the complaint should be

dismissed with prejudice. An additional reason to dismiss the complaint with prejudice is that the allegations in the complaint do not state the elements of any of the causes of action alleged.

### A. The Complaint Does Note State a Claim for Invasion of Privacy

1. <u>The Complaint Does Not State a Claim for Public Disclosure of Private Facts</u>

The plaintiff vaguely alleges that Hachette's distribution of the Book was a "cruel and malicious exposure[] of the most intimate details of plaintiff's private life to the public." Complaint ¶¶ 27-31 (quoting ¶ 29). The Arkansas Supreme Court has not expressly addressed the tort of public disclosure of private facts, but it has indicated its willingness to adopt the *Restatement (Second) of Torts* on issues relating to invasion of privacy. *See Dodrill v. Ark. Democrat Co.*, 265 Ark. 628, 637, 590 S.W.2d 840, 844 (1979); John J. Watkins, *The Privacy Tort: An Arkansas Guide*, 1993 ARK. L. NOTES 91, 95.

According to the *Restatement*, a person who gives publicity to a matter concerning the private life of another is subject to liability if: (a) a reasonable person would find publicity of the matter to be highly offensive; and (b) the matter is not of legitimate public concern. RESTATEMENT (SECOND) OF TORTS § 652D (1977).

*a. The Plaintiff Himself Made the Alleged Private Facts Public*

In the complaints he filed in his D.C. lawsuit, the plaintiff repeated, in graphic detail, the precise passages from Jessica Cutler's Internet weblog that he alleged invaded his privacy and caused him emotional distress. Exhibit A, D.C.

Complaint ¶¶ 13, 30, Docket No. 1, Case No. 1:05-CV-970-PLJ-JMF (D.D.C. May 16, 2005); Exhibit B, First Amended D.C. Complaint ¶¶ 46, 82, Docket No. 58, D.C. Lawsuit (D.D.C. Oct. 30, 2006); *see Steinbuch v. Cutler*, No. CIV.A.05-0970(PLF), 2006 WL 979311 (D.D.C. Apr. 14, 2006). The plaintiff filed his D.C. lawsuit as a matter of public record on May 16, 2005, before the date of the alleged conduct giving rise to the plaintiff's claims, which, according to the complaint was "Beginning on or about June 1, 2005 and thereafter." Complaint ¶ 20. In other words, before June 1, 2005, it was plaintiff who previously exposed to the public (in his D.C. action), in explicit detail, facts about the sexual relationship he claims to have had with Ms. Cutler. Exhibit A, D.C. Complaint ¶ 13. This reason alone is sufficient to dismiss the complaint with prejudice.

Particularly pertinent to this lawsuit, the *Restatement* explains that there is no liability for disclosing facts that have already been disclosed in public court records:

> There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as . . . the pleadings that he has filed in a lawsuit.

RESTATEMENT (SECOND) OF TORTS § 652D, cmt. b.; *see United States Dep't of Justice v. Reporters Comm. for the Freedom of the Press*, 489 U.S. 749, 764 n.15 (1989); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 493 (1975); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1233 (7th Cir. 1993); *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69, 79 n.12 (8th Cir. 1976). A defendant may not be held liable for

publishing a statement that the plaintiff already has made public. W. PAGE

KEETON ET AL., *supra*, § 113 at 802; *see Gibson v. Regions Fin. Corp.*, No.

4:05CV01922 JLH, 2008 WL 110917, at *6 (E.D. Ark. Jan. 9, 2008).

The D.C. lawsuit garnered a great deal of media attention.[4] In that case,

District Judge Paul Friedman remarked:

> [T]he plaintiff is distressed by the fact that this lawsuit has drawn media attention. Perhaps the plaintiff should have considered that fact before he filed suit. Perhaps plaintiff's counsel should consider that fact before filing motions in which he repeats salacious details and allegations seemingly without regard for the distress that other persons might feel at these public filings.

*Steinbuch*, 2006 WL 979311, at *1. The court refused to "order a prior restraint

on the free speech of the defendant or her counsel merely because the plaintiff is

piqued by the media interest his own lawsuit has sustained or heightened . . . ." *Id.*

The plaintiff attempts to link Hachette's distribution of the Book to the allegations

that are the subject of his D.C. Lawsuit. Complaint ¶¶ 14-26. Hachette cannot be

held liable for distributing the Book when it was plaintiff himself who created a

---

[4] In addition to the "media attention" mentioned by the District of Columbia District Court, the allegations in the plaintiff's D.C. Lawsuit have inspired a substantial body of legal scholarship. *See, e.g.*, Susan W. Brenner, *Criminalizing "Problematic" Speech Online*, 11 J. INTERNET L. 3, 9-11 (2007); Susan W. Brenner, *Should Online Defamation Be Criminalized?*, 76 MISS. L.J. 705, 725 (2007); Daniel J. Solove, *A Tale of Two Bloggers: Free Speech and Privacy in the Blogosphere*, 84 WASH. U. L. REV. 1195 (2006); Sonja R. West, *The Story of Me: The Underprotection of Autobiographical Speech*, 84 WASH. U. L. REV. 905 (2006); Jennifer Meredith Liebman, Recent Development, *Defamed by a Blogger: Legal Protections, Self-Regulation and Other Failures*, 2006 U. ILL. J.L. TECH. & POL'Y 343, 353. Hachette does not adopt any of the legal arguments or conclusions made in these articles. They are cited only for the purpose of showing the public's interest in the plaintiff's D.C. lawsuit.

public link between the blog and the conduct alleged to be described in the Book. *See Gibson*, 2008 WL 110917, at *6; *Cox Broad. Corp.*, 420 U.S. at 496 ("Once true information is disclosed in public court documents open to the public inspection, the press cannot be sanctioned for publishing it."); *Haynes*, 8 F.3d at 1233 ("all the discreditable facts about [plaintiffs] that are contained in judicial records are beyond the power of tort law to conceal," dismissing privacy claims in part because facts were already disclosed in previous court records); *McNally*, 532 F.2d at 77 (no invasion of privacy where information was previously disclosed in court).

### b. *The Complaint Fails to Allege that the Book Made Offensive Statements About the Plaintiff*

Moreover, the plaintiff has not identified any particular statement in the Book that he alleges to be highly offensive, Complaint ¶¶ 28-31, and he has not shown that any actions by fictional characters in the Book could reasonably be understood as a portrayal of the plaintiff's actions. *See Middlebrooks v. Curtis Publ'g Co.*, 413 F.2d 141, 142-43 (4th Cir. 1969). Consequently, the plaintiff's claim should be dismissed.

### c. *The Matters in the Book Are of Legitimate Public Interest*

Furthermore, the First Amendment protects disclosure of any fact about an individual that has a logical nexus to a matter of legitimate public interest. *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 274 (5th Cir. 1989); *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980) (per curiam). Matters of public concern

extend "to information concerning interesting phases of human activity and embraces all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period." *Campbell*, 614 F.2d at 397; *see Time, Inc. v. Hill*, 385 U.S. 374, 388 (1967). "The public has a legitimate interest in sexuality . . . ." *Haynes*, 8 F.3d at 1234 (Posner, J.) (noting that "[intimate] details in the memoirs of former spouses and lovers is common enough and rarely provokes a lawsuit even when the former spouse or lover is still alive."). Even if the Court were to assume, as plaintiff alleges, that statements in the Book reflect events in the author's life, there is a legitimate public interest in autobiographical materials. *See Dresbach v. Doubleday & Co.*, 518 F. Supp. 1285, 1290 (D.D.C. 1981); *Anonsen v. Donahue*, 857 S.W.2d 700, 701, 705 (Tex. Ct. App. 1993); *Bonome v. Kaysen*, No. 032767, 2004 WL 1194731, at *6 (Mass. Super. Ct. Mar. 3, 2004) (holding that defendant, who wrote about her sexual relationship with plaintiff in explicit detail, had the First Amendment "right to disclose her own intimate affairs").

The complaint fails to state a single element to support a claim for public disclosure of private facts. The claim should be dismissed with prejudice.

2. The Complaint Does Not State a Claim for Intrusion upon Seclusion

In a conclusory fashion, the plaintiff alleges that he has a cause of action against Hachette for intrusion upon seclusion based on Hachette's distribution of the Book. Complaint ¶¶ 40-42. Arkansas recognizes the tort. *Dunlap v. McCarty*, 284 Ark. 5, 9, 678 S.W.2d 361, 364 (1984).

The three components of intrusion are: "(1) an intrusion (2) that is highly offensive (3) into some matter in which a person has a legitimate expectation of privacy." *Fletcher v. Price Chopper Foods*, 220 F.3d 871, 875 (8th Cir. 2000). "A legitimate expectation of privacy is the touchstone of the tort of intrusion upon seclusion." *Id.* at 877.

The plaintiff does not denominate what specific acts by Hachette he alleges to be a highly offensive intrusion. To the contrary, it is the plaintiff who publicly disclosed the same "private" facts alleged here when he filed his D.C. lawsuit in May of 2005. *See* Part IV.A.1.a., *supra*. In that lawsuit, the D.C. court observed: "Perhaps the plaintiff should have considered [drawing media attention] before he filed suit." *Steinbuch v. Cutler*, 2006 WL 979311, at *1; *see* Exhibit A, D.C. Complaint ¶ 13. The plaintiff's claim for intrusion upon seclusion is conclusory, contradicted by the D.C. Complaint and the public documents described in the D.C. Complaint, and should be dismissed with prejudice.

### 3. The Complaint Does Not State a Claim for False Light

The plaintiff makes a threadbare and conclusory allegation that the Book portrayed him in a false light. Complaint ¶¶ 37-39. To recover for a false light invasion of privacy, the plaintiff must establish that: (1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person; and (2) Hachette had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Dodson v. Dicker*, 306 Ark. 108, 113, 812 S.W.2d 97, 99 (1991). For a matter of

general or public concern, the plaintiff must prove actual malice by clear and convincing evidence. *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)); *see Campbell*, 614 F.2d at 397. The plaintiff's claim for false light fails because the complaint does not state any part of the Book that placed the plaintiff in a false light.

The First Amendment protects disclosure of any fact about an individual that has a logical nexus to a matter of legitimate public interest. *Time, Inc. v. Hill*, 385 U.S. at 388; *Ross*, 870 F.2d at 274; *Campbell*, 614 F.2d at 397; *Dresbach*, 518 F. Supp. at 1290. From the date of the plaintiff's first lawsuit in Washington, D.C., the plaintiff has noted the intense media scrutiny that has accompanied Ms. Cutler's Blog. *See* Exhibit A, D.C. Complaint ¶¶ 16-19; *see* 2006 WL 979311, at *1. By filing his D.C. lawsuit, the plaintiff thrust what he says are explicit details of his sexual relationship with Ms. Cutler into the media spotlight. In effect, the plaintiff is attempting to hold the defendants in his various lawsuits liable for statements that he made about himself. *See* Part IV.A.1.a., *supra*; *cf. Gibson*, 2008 WL 110917, at *6.

The plaintiff fails to allege actual malice in his complaint, that is, specific facts that show Hachette reasonably understood the Book to describe actual facts about him, yet entertained "serious doubts" as to the truth of those facts. *See Peoples Bank & Trust Co. v. Globe Int'l Publ'g*, 978 F.2d 1065, 1068-70 (8th Cir. 1992); *Dodson*, 306 Ark. at 114, 812 S.W.2d at 100. Failure to investigate, by itself, is not enough to establish actual malice. *Dodson*, 306 Ark. at 114, 812

S.W.2d at 100. The plaintiff's false light claim must be dismissed because he has not alleged what portions of the Book placed him in a false light and has not alleged facts sufficient to meet the actual malice standard. *See Dresbach*, 518 F. Supp. at 1291-93. These failures are exacerbated by the fact that Hachette is only a distributor of the Book, and neither wrote, published, nor had any personal knowledge of the contents of the Book. The plaintiff's false light claim should be dismissed with prejudice.

### 4. Hachette Did Not Misappropriate the Plaintiff's Likeness or Identity and Did Not Otherwise Violate His Publicity and Personality Rights

Even though there is no mention of the plaintiff's name in the Book and no photograph or drawing of his face or body, the plaintiff alleges that Hachette, by distributing the Book, has somehow misappropriated his image and violated his rights to publicity and personality. Complaint ¶¶ 32-36. Arkansas does recognize a cause of action for unauthorized commercial use of another person's name or likeness. *See Olan Mills, Inc. v. Dodd*, 234 Ark. 495, 499, 353 S.W.2d 22, 24 (1962). Mere publication is not enough to state a cause of action—the public must be able to identify the person from the use, and the defendant must have capitalized on the person's likeness to sell more units. *Stanley v. Gen. Media Commc'ns, Inc.*, 149 F. Supp. 2d 701, 706 (W.D. Ark. 2001). Thus, the complaint fails on the first element alone..

Moreover, the tort of misappropriation was never meant to apply to works of pure fiction. *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. Rptr. 2d

305, 307 (Cal. Ct. App. 1997), *republished at* 79 Cal. Rptr. 2d 207. No claim exists "when there is merely alleged to be some resemblance between an actual person and a character in a work of fiction." *Id.*

The plaintiff's claims for misappropriation and violation of his personality and publicity rights must be dismissed with prejudice

### B. The Complaint Does Not State a Claim for Defamation

To state a claim of defamation, the specific statements alleged to be defamatory must be stated in the complaint. *Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996). The plaintiff, in contrast, offers only the vague and conclusory allegation that Hachette defamed him by "convey[ing] false and harmful statements of fact and us[ing] defamatory language [sic] regarding plaintiff." Complaint ¶¶ 43-49 (quoting ¶ 45). The defamation claim should thus be dismissed for failure to state a claim on this basis alone.

In addition, to be defamatory, a statement must tend to or be reasonably calculated to cause harm to another's reputation. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 955, 69 S.W.3d 393, 402 (2002). The elements are: (1) a defamatory statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) the defendant's publication of the statement; (4) the defendant's fault for the publication; (5) the statement's falsity; and (6) damages. *Id.* at 955-56, 69 S.W.3d at 402. Arkansas has abolished the concept of defamation *per se*—damages must be pleaded and proven in every case *United Ins. Co. v. Murphy*, 331 Ark. 364, 370, 961 S.W.2d 752, 756 (1998); *contra* Complaint ¶ 46.

For an allegedly defamatory fictional work, the description of the fictional character must be so closely akin to the plaintiff that a reader of the book who knows the real person would have no difficulty linking the two. *Carter-Clark v. Random House, Inc.*, 793 N.Y.S.2d 394, 395 (N.Y. App. Div. 2005). The complaint must sufficiently allege that a reasonable reader would believe that a fictional character in the Book refers to the plaintiff. *Id.* The complaint makes no specific allegations that any character or any statement in the Book is of and concerning plaintiff.

Even if the Court were to assume that a reasonable reader could identify the plaintiff as one of the characters in the Book, the plaintiff has not alleged that the Book states anything about the plaintiff that is capable of a defamatory meaning.[5] Further, the complaint does not point to any part of the Book that would cause harm to the plaintiff's reputation. The defamation claim must be dismissed with prejudice.

### C. The Complaint Does Not State a Claim for Outrage

The plaintiff alleges that Hachette intentionally caused him emotional distress. Complaint ¶¶ 50-57. The Arkansas Supreme Court has traditionally

---

[5] If a statement is susceptible to two meanings, one defamatory and one harmless, the words are to be read in their plain and natural meaning, as they would be interpreted by an ordinary reader considering the matter as a whole. *Pritchard v. Times Sw. Broad., Inc.*, 277 Ark. 458, 461, 642 S.W.2d 877, 878 (1983); *Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 18, 129 S.W.3d 324, 335 (2003), *aff'd*, 93 Ark. App. 317, 219 S.W.3d 643 (2005). A court must not strain to find an ambiguous statement defamatory. *Pritchard*, 277 Ark. at 461, 642 S.W.2d at 878; *Superior Fed. Bank*, 84 Ark. App. at 18, 129 S.W.3d at 335.

taken a narrow view of claims for outrage, also known as intentional infliction of emotional distress. *Deitsch v. Tillery*, 309 Ark. 401, 406-07, 833 S.W.2d 760, 762 (1992). The claim requires that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the defendant's actions caused the plaintiff's emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it. *Faulkner*, 347 Ark. at 957, 69 S.W.3d at 403-04. A claim of outrage may be dismissed if the allegations in the complaint, as a matter of law, are not so outrageous as to permit recovery. *Id.* at 958, 69 S.W.3d at 404. For example, strained working relationships, false accusations and rumors are not enough to state a claim for outrage. *Id.*

The complaint alleges that Hachette distributed a book. Nothing about distributing a book is extreme and outrageous, beyond all possible bounds of decency, or utterly intolerable in a civilized community. To the contrary, we live in a society that fosters toleration of the freedom of speech, the freedom of the press, and the freedom of expression that necessarily accompany the distribution of written materials.

Moreover, since plaintiff himself publicly disclosed in the D.C. action intimate facts regarding his sexual relationship with Ms. Cutler, as discussed in

Part IV.A.1.a., *supra*, any subsequent disclosure of such facts cannot possibly state a claim for outrage. The claim must be dismissed with prejudice.

### D. The Plaintiff is Not Entitled to Punitive Damages

The plaintiff asserts a claim for punitive damages against Hachette. Complaint ¶¶ 58-59. Because the plaintiff has no cause of action for compensatory damages, he has no claim for punitive damages. *See Olmstead v. Moody*, 311 Ark. 163, 167, 842 S.W.2d 26, 28-29 (1992).

The only purpose of this lawsuit, the fourth one in a series concerning the same issues, is to cause harassment and annoyance. The plaintiff's complaint against Hachette is vexatious, fails as a matter of law, and should be dismissed with prejudice.

### VI. CONCLUSION

The plaintiff's complaint does not state an actionable claim against defendant Hachette Book Group and cannot be cured by further pleading. The complaint should be dismissed with prejudice.

Respectfully submitted,

WILLIAMS & ANDERSON PLC
Twenty-Second Floor
111 Center Street
Little Rock, AR 72201
501.372.0800


By: /s/ Philip S. Anderson
    Philip S. Anderson, Ark. Bar. No. 60001
    Clayborne S. Stone, Ark. Bar No. 2003102
    Andrew King, Ark. Bar No. 2007176

*Attorneys for Defendant Hachette Book Group*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October, 2008, a copy of the foregoing brief was served on all parties of record via this Court's CM/ECF system and a copy has been served via U.S. Mail and electronic mail upon:

Robert Steinbuch, Esquire
6834 Cantrell Road, #222
Little Rock, AR 72207
robertsteinbuch@gmail.com


    /s/ Philip S. Anderson
Philip S. Anderson