UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

------------------------------------------------------------
Robert Steinbuch                              :Index No.: 4-08-cv-000456 GTE
      Plaintiff,                          :
                                          :
  -v-                                       :
                                          :
Hachette Book Group, AKA Hatchette Book       :
Group                                         :
      Defendants.                        :
------------------------------------------------------------

**FILED** U.S. DISTRICT COURT EASTERN DISTRICT ARKANSAS JUN 18 2009 JAMES W. McCORMACK, CLERK By: _____ DEP CLERK

## MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF ITS MOTION TO AMEND

Plaintiff seeks leave to file the attached Reply Brief in Support of its Motion to Amend. Defendant filed a response to Plaintiff's Motion to Amend that constitutes a new motion to dismiss raising issues that Defendant did not raise in it last motion to dismiss. As a consequence, Plaintiff seeks leave to respond to these new arguments.

For the foregoing reasons, Plaintiff prays that this Court will grant the requested relief.

June 18, 2009

_/s/_

Robert Steinbuch
Plaintiff
6834 Cantrell Rd., #222
Little Rock, AR 72207
(718) 673-4393
robertsteinbuch@gmail.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

| | |
|---|---|
| Robert Steinbuch | :Index No.: 4-08-cv-000456 GTE |
|     Plaintiff, | : |
| | : (oral argument requested) |
| -v- | : |
| | : |
| Hachette Book Group, AKA Hatchette Book Group | : |
|     Defendants. | : |

---

## REPLY BRIEF IN SUPPORT OF ITS MOTION TO AMEND

Plaintiff filed a motion to amend its complaint, pursuant to this Court's order. Although Defendant had already filed a motion to dismiss, Defendant responded to Plaintiff's motion to amend the complaint with another motion to dismiss based on the statute of limitations. Defendant seeks to apply the statute of limitations of Washington, D.C. rather than that of Arkansas.

However, here's what Defendant's counsel wrote in the related case against Hyperion:

> There is no basis upon which a court in the District of Columbia can assert ... jurisdiction over [Defendant] because the alleged injury giving rise to plaintiff's lawsuit, i.e., the publication of the *Washingtonienne*, did not occur in within the District of Columbia. Moreover, plaintiff was a resident of Maryland, not Washington, D.C., when the *Washingtonienne* (the "Book") was published, and he alleges in his first amended complaint that the harm giving rise to his lawsuit occurred in Arkansas, not Washington, D.C.

*Steinbuch v. Cutler*, 4:06-cv-00620-JLH, Doc. 76 at 2

# ARGUMENT

Defendant's arguments are without merit:

1. Defendant argues that Arkansas and Washington D.C. are both "single publication rule" states. Judge Wilson, however, held otherwise. *Steinbuch v. Cutler*, No. 4:06-CV-620 (WRW), 2007 WL 486626, at *7 (E.D. Ark. Feb. 7, 2007), *aff'd in part, rev'd in part* 518 F.3d 580 (8th Cir. 2008). And,

> [u]nder the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.

*United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

*Allen v. McCurry*, 449 U.S. 90, 94 (U.S. 1980).

Defendant is now arguing otherwise because under the multiple publication rule, plaintiffs could bring causes of action each time Defendant sells a tortious publication in Arkansas. Thus, under the multiple publication rule, the

statute of limitations is a non-issue—as Defendant continues to sell its tortious material in Arkansas even today.

However, Defendant's arguments regarding statutes limitation are equally incorrect even had this Court not ruled as it did, as the following analysis demonstrates.

2. Defendant incorrectly asserts that Plaintiff "stipulated that D.C. law applied because he concluded there was no material difference between the two." Def's Br. at 6. Defendant cites and attaches Plaintiff's brief at 32 n.31. As the text of that brief makes clear, Plaintiff never "stipulated that D.C. law applied," but, rather, stated that "there was no material difference between the two." A cursory review of that attachment to Defendant's brief demonstrates that Defendant's assertion is false. The brief states: "Although, a choice of law analysis would have to investigate the applicability of Maryland law as the domicile of Plaintiff, the law of Maryland and the District of Columbia are the same on these issues." Plaintiff never "stipulated that D.C. law applied" in any case.

3. Defendant's attempt at fortune-telling/divination has failed. Defendant falsely asserts that Plaintiff "intended to pursue claims against the book in the D.C. action, but instead filed a separate suit over the book in Arkansas only because he wanted to avoid further skirmishing over what exactly the scope of the claims pled in D.C. were supposed to be." Def's Br. at 6. Defendant is wrong. And again Defendant attached an exhibit (Ex. 6 at 1) that states exactly the opposite. In that exhibit—a previous filing by Plaintiff—Plaintiff described "Cutler's misleading description of the procedural history of this case." Therein,

3

Defendant had been incorrectly conflating the D.C. action with the Arkansas action (something Defendant is also doing here). To make clear that up until now no one suggested that the Arkansas action was related to the D.C. action in the way that Defendant now suggests, Plaintiff stated that the mere mention of the book in the D.C action—for the purposes of *res gestae*—led to a vehement objection by Defendant, *i.e.*, that "each and every time Plaintiff raised the issue of the tortious book [in the D.C action] that Cutler wrote and Hyperion/Disney published, Cutler objected — stating that this case did not involve her privacy-invading book." Defendant's recent attempts to conflate the D.C. action and the Arkansas actions are belied by the defendants' own previous assertions, no less Plaintiff's.

4. Defendant falsely contends that Plaintiff filed the first Arkansas action "exactly two days before the one-year anniversary of what Steinbuch understood to be the formal publication of the book." Def's Br. at 6-7. Defendant is mistaken as to the objective facts. With this clearly incorrect information, Defendant then incorrectly attempts to divine that Plaintiff filed when he did because he believed that D.C. law applied. Defendant is twice wrong.

Defendant blatantly misstates the contents of Plaintiff's first complaint against the Hyperion. In that first complaint, Plaintiff stated that the date of publication was June 15, 2005—not June 1, 2005. *Steinbuch v. Cutler and Hyperion*, 4:06-cv-00620-WRW, Doc. 1 at ¶17. Defendant apparently did not read that complaint correctly.

4

When Plaintiff filed his complaint in May, it was nearly <u>three weeks</u> before "before the one-year anniversary of what Steinbuch understood to be the formal publication of the book." Def's Br. at 6-7. As can be clearly seen, Defendant has misstated the contents of the Hyperion complaint. Although that one-year date was irrelevant for the filing of the complaint, it was, nonetheless, several weeks from the date of the filing of the complaint. Simply, the date of the filing provides no "evidence" as to Plaintiff's understanding of the law, and Defendant's attempt at divination is futile. Even had Defendant not completely misread the complaint, the date of the filing would provide no "evidence" as to Plaintiff's understanding of the law. But since Defendant did completely misstate the date of the filing of the Hyperion complaint, Defendant's argument has no merit even on its own terms.

Given Defendant's fatal and obvious misunderstanding of the facts of the relevant case, Defendant's argument collapses. Plaintiff has universally contended that Arkansas law applies and Defendant can point to nothing to refute this clear fact. Plaintiff never believed that D.C. law applies to the Arkansas actions, and Defendant has not provided any evidence to the contrary.

Most importantly, Defendant is estopped from making its argument here. Here's what Defendant's counsel wrote in the related case against Hyperion:

> There is no basis upon which a court in the District of Columbia can assert . . . jurisdiction over [Defendant] because the alleged injury giving rise to plaintiff's lawsuit, i.e., the publication of the *Washingtonienne*, did not occur in within the District of Columbia. Moreover, plaintiff was a resident of Maryland, not Washington, D.C., when the *Washingtonienne* (the "Book") was published, and he alleges in his first amended complaint that the harm giving rise to his lawsuit occurred in Arkansas, not Washington, D.C.

5

*Steinbuch v. Cutler*, 4:06-cv-00620-JLH, Doc. 76 at 2 (no emphasis provided, as the whole statement would otherwise be underlined). And the Court ruled with Defendant's counsel. These arguments stand in striking contrast to the position taken now by the same counsel in a related case. Defendant may not now take this newly-created, contrary position. *See, supra, United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *Allen v. McCurry*, 449 U.S. 90, 94 (U.S. 1980).

Indeed, Plaintiff has consistently taken the proper position that Arkansas law applies to the publication of the book. Defendant's arguments on why D.C. law should apply are particularly strained, particularly given that Defendant had to admit that Plaintiff never resided in D.C. Def's Br. at 4. Defendant is relegated to arguing that Maryland is "very close" to D.C. *Id.* Of course, being "very close" to the jurisdiction does not satisfy any standard for determining choice of law.

As mentioned, Defendant's counsel has already presented the facts and law that this Court should accept:

> There is no basis upon which a court in the District of Columbia can assert ... jurisdiction over [Defendant] because the alleged injury giving rise to plaintiff's lawsuit, i.e., the publication of the *Washingtonienne*, did not occur in within the District of Columbia. Moreover, plaintiff was a resident of Maryland, not Washington, D.C., when the *Washingtonienne* (the "Book") was published, and he alleges in his first amended complaint that the harm giving rise to his lawsuit occurred in Arkansas, not Washington, D.C.

*Steinbuch v. Cutler*, 4:06-cv-00620-JLH, Doc. 76 at 2, filed 05/09/2008. Defendant is bound by that standard.

Finally, and most importantly, ¶3 of the Amended Complaint submitted with Plaintiff's motion to amend in this case states: "At all relevant times, the plaintiff has been a citizen and/or resident of Arkansas."

5. Defendant misconstrues the law on choice of law. In the seminal case, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984), the Supreme Court held that "[t]he 'single publication rule, New Hampshire's unusually long statute of limitations, and plaintiff's lack of contacts with the forum State do not defeat jurisdiction otherwise proper under both New Hampshire law and the Due Process Clause.'" Thereafter, the New Hampshire Supreme Court, determined the choice-of-law question, and answered the question as to which statute of limitations apply to the action that involved <u>no</u> New Hampshire residents. The Court considered whether the law of New Hampshire or the law of a state where either party resided (and which had a shorter statute of limitations) applied. The Court held that New Hampshire's own six-year statute of limitations applied to the defamation action brought by non-resident Plaintiff against non-resident Defendant. *Keeton v. Hustler Magazine*, 131 N.H. 6, 17 (N.H. 1988).

> The Court's analysis is instructive:
>
> [I]n such cases, our courts may typically apply the relevant New Hampshire statute without appeal to our choice-influencing considerations.
>
> \*\*\*
>
> Moreover, there is no indication, based on the peculiar facts of this case, that foreign interests in barring Keeton's claim outweigh forum interests in allowing it. In this regard we first note that foreign States have no reason to fear that application of our longer statute will, in fact, disadvantage the defendants. Because Flynt and Hustler distributed, in New Hampshire . . . they had ample reason to anticipate that Keeton might bring suit against

> them here to which we would apply our own law. Moreover, Flynt and Hustler do not even allege loss of evidence or other disadvantage resulting from the timing of Keeton's suit.
>
> \*\*\*
>
> Although our own interest in striking an appropriate balance between promoting protection for defendants and legitimate recovery for plaintiffs is less great than it would be if defendants or plaintiff were New Hampshire residents, it is nonetheless substantial. As noted above, this is because the defendants distributed, in this State, a significant number of libelous publications giving rise to the injuries for which Keeton sues. ... Similarly, our general interest in providing plaintiffs sufficient time to bring suit is enhanced when the injuries for which suit is brought were incurred in this State.
>
> \*\*\*\*
>
> The fact that [Plaintiff] had never been in New Hampshire prior to trial does not mean that she suffered no injury here. ... [I]t is not apparent to us why Keeton should be prevented from recovery anywhere because three States in which she arguably received greater injury, or which have some additional connection with the parties, have chosen to adopt shorter limitations periods.

*Keeton v. Hustler Magazine*, 131 N.H. at 15-17.

The Court continued by considering the choice-of-law test that Defendant suggests, and the Court finds <u>opposite</u> of what Defendant here suggests. *Id.* at 17-22. Although that test might not even apply here, its application nonetheless holds that Arkansas law applies its own statute of limitations—*i.e.*, three years. The Court's analysis is instructive and would produce the same outcome here. The relevant portion of the Court's opinion is repeated in some length as follows:

> 1. Predictability of results
>
> Predictability of results, the first of our choice-influencing criteria, is usually implicated only in suits involving contractual or similar consensual transactions. It emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset. There was, of course, no such agreement here. Furthermore,

8

while it is true that a libel defendant can consider the law applicable to potential suits before making the decision to publish, he cannot, in making this decision, legitimately rely on the potential plaintiff's failure to bring timely suit. That action is entirely in the plaintiff's hands and beyond the defendant's control.

...[W]e do not believe that our decision to apply the New Hampshire statute of limitations in this case will significantly encourage unwanted forum shopping in later cases. ... Forum shopping in the classic sense refers to a plaintiff's attempt to have a court apply the law that will win her the most favorable verdict, not to her attempt to find a forum whose statute of limitations will allow it to entertain her otherwise legitimate suit. ...

2. Relationships among the States

The second consideration, which counsels maintenance of reasonable orderliness among the States, requires only that "court not apply the law of a State which does not have a substantial connection with the total facts and the particular issue being litigated." Unlike cases in which the defendants merely did business in the forum, the injury for which Keeton sues occurred, at least in part, in this State. ...

New Hampshire, of course, was not the sole place of the injury for which Keeton seeks recovery. ... While New Hampshire was not the State of greatest distribution, it was connected with the basic facts necessary to prove the libel through distribution of a significant number of copies. ...

3. Simplification

We have already discussed the fact that simplification counsels us to avoid undertaking the difficult or impossible task of discerning the weights that foreign legislatures have attributed to the interests underlying particular statutes of limitations. We similarly determine that while it might appear to simplify the judicial process to hold that we will regularly apply the statute of limitations of, for example, the plaintiff's domicile to multi-state libel actions, the result in fact would be just the opposite. To depart from our traditional rule by applying a foreign statute of limitations, when concerns other than simplification did not so dictate, would only complicate and confuse New Hampshire conflicts law for the future. ...

4. Forum interests

As noted in our discussion of the purposes underlying statutes of limitations and New Hampshire's substantial connection with the facts and issue to be litigated, our interest in applying our own statute to cases generally stems from our concern to insure the orderly administration of

our courts and to protect the respective interests of defendants and plaintiffs. Given our inability reliably to discern the weights that other States accord their own interests relevant to the choice among statutes of limitations, we may conclude that there is, in essence, no conflicting foreign interest that outweighs this substantial forum interest.

5. The sounder rule approach

In addition to forum interests, our decision to apply the New Hampshire statute to Keeton's entire claim is based primarily on our view that this statute reflects the better rule of law.

[W]e cannot ignore that false statements of fact not only lack constitutional value, Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974), but are capable of inflicting substantial injuries, which warrant redress....

Because the plaintiff's entire action accrues on the first date of publication, the rule also increases the likelihood that the statute of limitations will run on the plaintiff's claim. As the Court of Appeals for the Second Circuit has recognized, a short statute of limitations may unduly prejudice plaintiffs: "In New York, as in most other jurisdictions, the statute of limitations for libel actions is unusually short. To fix as the date of legal publication even the time that the offending matter is placed on sale to the public may create a trap for unwary plaintiffs; magazines are often postdated several weeks or months after the actual date they are placed on sale to the public . . . . Moreover, under the single publication rule, victims of mass publication libel are given but one action in which to recover for all harm produced by a single edition of a newspaper, magazine, or book. The earlier that sole cause of action must be commenced, the greater the likelihood of post-judgment distributions of the offending material for which the victim is denied any relief whatever."

Given the potential prejudice that may result to plaintiffs, we consider that an unusually short statute of limitations for libel is undesirable where a State applies the single publication rule. The better rule, in our view, is a longer statute. This view is consistent with New Hampshire's general preference for decisions on the merits....

We recognize that the legislature's recent enactment of a three-year statute [like Arkansas] of limitations for libel actions might appear to suggest that the six-year statute was outmoded and should not apply to this case. However, we do not believe that the change warrants application of a foreign statute. Although the legislature has changed the limitations period, the change places New Hampshire in conformity with States having the longest statutes of limitations for libel. While the six-year

10

statute was unusually long, the legislature's decision does not suggest that we should prefer to it a foreign limitations period so short that it may unduly burden plaintiffs.

****

We therefore conclude not only that the combination of our forum interests and our interest in simplification counsel application of our statute in this as in most cases, but that a full-blown analysis based on our five choice-influencing considerations would provide ample further support for this conclusion. We emphasize that we would not anticipate requiring a choice-influencing analysis in any case in which this State was either the domicile of one of the parties or the place where the cause of action arose. ...

In reaching our decision, we do not, of course, determine that other States are not substantially interested in this litigation. Certainly they are, and for just the reasons that the dissent cites. However, the absence of clear reason to believe that a relevant foreign statute of limitations expresses foreign interests in barring the action that outweigh our own interests in entertaining it counsels application of our own law, particularly in light of the simplification that this outcome affords. When viewed in combination with our understanding of the better rule of law, our reasons for applying our own statute in this complex case are only strengthened.

*Keeton v. Hustler Magazine*, 131 N.H. at 15-22.

The law on choice of law clearly indicates that Arkansas' statute of limitations applies here.

6. Defendant's final argument is that the location of the events <u>described in the book</u> somehow determine jurisdiction. This has no basis in law. If an Arkansas resident defamed another Arkansas resident in a book by saying, for example, that the second resident embezzled money when she was a resident of, say, California, under Defendant's theory, the parties would have to go to California because that was the topic of the defamation. That is not the law, and Defendant has cited no law to support this highly novel argument.

## Conclusion

Plaintiff prays that this Court will grant its motion to amend.

June 18, 2009

Robert Steinbuch
Plaintiff
6834 Cantrell Rd., #222
Little Rock, AR 72207
(718) 673-4393
robertsteinbuch@gmail.com

CERTIFICATE OF SERVICE

Plaintiff served the attached motion by US mail on defendant on June 18, 2009 at:

Philip Anderson et al.
Williams & Anderson
111 Center St.
Little Rock, AR 72201

In addition, plaintiff's filing will result in defendant also receiving service through the ECF system.

Robert Steinbuch