# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

ROBERT STEINBUCH                                                        PLAINTIFF

v.                                       No. 4-08-CV-000456 JLH

HACHETTE BOOK GROUP                                                     DEFENDANT

### DEFENDANT'S MOTION FOR LEAVE TO FILE
### SUR-REPLY IN OPPOSITION TO PLAINTIFF'S
### MOTION FOR LEAVE TO AMEND

Defendant Hachette Book Group ("Hachette") respectfully moves for leave to file a sur-reply to Plaintiff's Motion for Leave to Amend, and for grounds states as follows:

1.      In its Memorandum in Opposition to Motion to Amend filed on June 5, 2009 (Dkt. No. 36), Hachette referred to a single threshold issue, not yet addressed by the parties or the Court, that would eliminate the need to expend substantial resources briefing the multiple legal issues that relate to the merits: specifically, whether the proposed claims are time-barred by the applicable statute of limitations, which, upon application of the Arkansas conflict-of-law rules, would make the law of the District of Columbia the appropriate choice.

2.      Plaintiff Robert Steinbuch (hereinafter, "Steinbuch") filed a Motion for Leave to File Reply Brief in Support of its Motion to Amend, and argued in the proposed Reply Brief that he should be granted leave to respond to the issues raised in Hachette's Opposition. Hachette does not oppose the motion.

3.      Steinbuch's reply brief raised new arguments in response to Hachette's position on the application of the District of Columbia's statute of limitations to Steinbuch's claims against Hachette, and Hachette's proposed sur-reply succinctly addresses those new arguments.

WHEREFORE, Hachette respectfully requests the Court to issue an order permitting it to file the attached sur-reply to Steinbuch's Reply Brief to Motion to Amend.

WILLIAMS & ANDERSON PLC
Twenty-Second Floor
111 Center Street
Little Rock, AR 72201
Telephone: 501-372-0800
Facsimile: 501-372-6453

By: ___/s/ Clayborne S. Stone_____
Philip S. Anderson, Ark. Bar No. 60001
Clayborne S. Stone, Ark. Bar No. 2003102
psa@williamsanderson.com
cstone@williamsanderson.com

and

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P
1050 Seventeenth Street, N.W., Suite 800
Washington, D.C. 20030
202.508.1100
Nathan Siegel, *pro hac vice*, nsiegel@lskslaw.com
John B. O'Keefe, *pro hac vice*, jokeefe@lskslaw.com

*Counsel for Defendant Hachette Book Group*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2009, a copy of the foregoing motion was filed via this Court's CM/ECF system and a copy has been served via U.S. Mail and electronic mail upon:

Robert Steinbuch, Esquire
6834 Cantrell Road, #222
Little Rock, AR 72207
robertsteinbuch@gmail.com


        /s/ Clayborne S. Stone

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**ROBERT STEINBUCH**                                             **PLAINTIFF**

**v.**                              **No. 4-08-CV-000456 JLH**

**HACHETTE BOOK GROUP**                                         **DEFENDANT**

## DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Defendant Hachette Book Group ("Hachette") respectfully submits this sur-reply to address the following specific points raised by Plaintiff Robert Steinbuch's Reply Brief in support of his Motion for Leave to Amend:

1.      Plaintiff repeatedly argues in his Reply Brief that a single paragraph in one memorandum written by defense counsel in his separate lawsuit against Hyperion is inconsistent with the choice-of-law argument now raised here by Hachette, which was not a party to that case. This argument has no merit. Hyperion's counsel consistently has argued in numerous memoranda and briefs in the Hyperion case that Arkansas lacks even personal jurisdiction over any defendant, and consistently raised points with respect to that issue that are the same as those raised by Hachette here with respect to choice of law.[*] Ironically, the Hyperion memorandum Plaintiff cites was filed in opposition to *Plaintiff's* motion to transfer that case to D.C., in which *Plaintiff* had argued that "counsel for Hyperion, Disney and Cutler wrote that Arkansas is not a

---

[*] *See, e.g., Steinbuch v. Cutler*, No. 4:06-CV-00620 (JLH), Dkt. No. 29 at 2, 12 ("The plaintiff makes the same claims against Ms. Cutler in this lawsuit . . . as he does in the D.C. lawsuit."; "Nothing in the Plaintiff's First Amended Complaint indicates that the basis of the alleged harm took place here in Arkansas."); *id.*, Dkt. No. 41 at 10 ("The plaintiff's unilateral act of moving to Arkansas and filing the complaint after the publication of the Book, when the alleged harm took place outside of the State and prior to the plaintiff's taking up residency in Arkansas, makes the State's interest in his alleged claims attenuated at best.").

convenient forum for this case" and had quoted this Court as saying that "the events that inspired the book took place in Washington, D.C. and most of the alleged harm took place there." *Steinbuch v. Cutler*, No. 4:06-CV-00620 (JLH), Dkt. No. 75 at 2. The context of the point Hyperion's counsel was making in the referenced passage, which was not about choice of law, was that it was Plaintiff's burden to show that a transfer was warranted, that Plaintiff had not even tried to make such a showing, and that his own allegations were inconsistent with such a showing. There can be no dispute that the choice-of-law question raised here was never considered in the Hyperion case. In any event, since Plaintiff has elected to bring a separate, subsequent lawsuit here, *Hachette* has a right to raise the issue on its own merits.

2.    Plaintiff next argues that Judge Wilson held in the Hyperion case that Arkansas follows the multiple publication rule. Pl.'s Reply at ¶ 1. This assertion is both incorrect and irrelevant in any event.

First, Judge Wilson never found that Arkansas law recognizes the multiple publication rule, and Steinbuch cites no authority suggesting that Arkansas does. Judge Wilson did not decide what Arkansas law ultimately is – he simply held that Arkansas "has not developed or considered this rule." *Steinbuch v. Cutler*, 2007 WL 486626 at *7 (E.D. Ark. Feb. 7, 2007). For the reasons previously discussed in Hachette's Opposition, we respectfully suggest this conclusion was incorrect. Arkansas long ago recognized the single publication rule, *see Murray v. Galbraith*, 86 Ark. 50, 109 S.W. 1011 (1908), as numerous other states understood when they pointed to *Murray* as authority supporting their adoption of the same rule. *See* Mem. in Opp'n to Motion to Amend at 3 n.2. Notably, Steinbuch never addresses those points at all, and he offers no reason to suggest why Arkansas would suddenly change its view to adopt a rule that no recent authority has accepted and that has been uniformly rejected by every authority

summarizing the current state of modern American law. *See, e.g., Restatement (Second) of Torts* § 577A. And his references to the "law of the case" are irrelevant, as this is a different case.

In any event, even if Judge Wilson had decided that issue and/or even if this Court thought there is a potential discrepancy in the laws of the two jurisdictions, it would not matter. That would simply mean there is another potential conflict between Arkansas and D.C. law and, for the reasons discussed in Hachette's Opposition, D.C. law is the better choice to apply here under Arkansas conflict-of-law principles. Indeed, while Judge Wilson was not explicitly addressing what choice of law might be made if the Hyperion case stayed in Arkansas, the larger point he made was that the single publication rule would be the better rule to apply to the circumstances of this case. Under Arkansas's choice-of-law rules, that itself is a factor that would support the application of D.C. law. *See Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 251, 234 S.W.3d 838, 846 (2006) (considering "application of the better rule of law").

Furthermore, if the multiple publication rule were applied, Plaintiff's Motion for Leave to Amend should be denied because his Amended Complaint fails to state any claim under that rule. Steinbuch would need to plead separate causes of action for each copy of the book allegedly sold in Arkansas and plead a distinct injury experienced in Arkansas flowing from each such particular sale. *See, e.g.* Hon. Robert D. Sack, SACK ON DEFAMATION: LIBEL, SLANDER & RELATED PROBLEMS § 7.2 at 7-4 (Under the multiple publication rule, "each publication of a communication provides a separate cause of action. Each sale of a copy of a particular work would give rise to a separate lawsuit in the jurisdiction in which the sale takes place and start the statute of limitations running anew."). The Amended Complaint contains no such allegations.

3.      Plaintiff proceeds to make a number arguments accusing Defendant of misleading the Court. These arguments are all pure exercises in semantics, such as suggesting some

material difference for these purposes between the dates "June 15" and "June 1" or arguing that a party does not "stipulate" to something when it makes an on-the-record statement regarding its position on a question of fact or law. Pl.'s Reply at ¶¶ 2-4. Defendant simply refers the Court to the relevant exhibits and arguments, which speak for themselves.

4. Turning to the merits of the choice-of-law issue actually presented, Plaintiff's argument relies almost entirely on the New Hampshire Supreme Court's decision in *Keeton v. Hustler Magazine, Inc.*, 549 A.2d 1187 (N.H. 1988). We suggest that *Keeton* is very poor authority for the issue joined here, for several reasons.

First, *Keeton* applied several choice-of-law principles that were very different from, and indeed inconsistent with, Arkansas law. New Hampshire at the time followed the traditional rule that statutes of limitation are always "procedural" for choice-of-law purposes, and therefore New Hampshire courts almost always applied the forum's statute. *Id.* at 1190-94. The question addressed in *Keeton* was whether the facts in that case justified some extraordinary departure from that rule, and its principal holding was that New Hampshire would continue to treat statutes of limitations as procedural. *Id.* at 1194. However, the Arkansas Supreme Court's decision in *Ganey*, 366 Ark. at 238, 234 S.W.3d at 838, expressly rejected the presumption that statutes of limitations are procedural. *Ganey*'s result is also sharply inconsistent with *Keeton*, since the Arkansas Supreme Court saw no similar concerns raised by the application of another state's statute of limitations.

Second, the actual substantive choice-of-law test *Keeton* proceeded to consider did not begin with any consideration of the traditional *lex loci* rule, as the Arkansas test does. For the reasons discussed in Hachette's Opposition, that threshold inquiry virtually eliminates Arkansas law as a potential choice.

Third, even if all these points were ignored, *Keeton* has been widely – almost notoriously – criticized as a poorly reasoned decision with respect to its choice-of-law analysis. Indeed, now-United States Supreme Court Justice David Souter, who was a member of the New Hampshire Supreme Court when *Keeton* was decided, wrote a lengthy dissent in which he found the majority's analysis to be "astonishing" and noted that the *Restatement (Second) of Conflict of Laws* had already singled out the case as an "egregious example" of forum-shopping. *Keeton*, 549 A.2d at 1197 (Souter, J., dissenting). Other jurisdictions have since agreed. *See, e.g, DeLoach v. Alfred*, 960 P.2d 628, 629 n. 1 (Ariz. 1998); *Stanley v. CF-VH Associates*, 956 F. Supp. 55, 58 (D. Mass. 1997) (both citing Judge Souter's dissent with approval). We submit that it is therefore highly unlikely that the Arkansas Supreme Court would follow *Keeton's* application of Professor Leflar's five factors, particularly given the contrary positions it adopted in *Ganey*. Indeed, the contrast between *Ganey* and *Keeton* further reinforces the conclusion that D.C. law is the correct choice under the applicable Arkansas test.

4. Finally, with regard to Plaintiff's argument here against applying the law of a single jurisdiction (D.C.) to each of his lawsuits, we call the Court's attention to the factual allegations of the Amended Complaint Plaintiff filed last week in a bankruptcy court adversary proceeding he is pursuing in New York against Ms. Cutler. The Amended Complaint there – submitted herewith as Exhibit 1 – pleads his claims related to both Ms. Cutler's blog and book as one continuous, inter-related set of wrongs. Indeed, the blog is referenced to support his claims against the book, and the book is repeatedly quoted to support his claims against both the blog and the book. Moreover, nowhere in that pleading is there a single reference to Arkansas.

Respectfully submitted,


WILLIAMS & ANDERSON PLC
Twenty-Second Floor
111 Center Street
Little Rock, AR  72201
(501) 372-0800

By:   /s/ Clayborne S. Stone
        Philip S. Anderson, Ark. Bar. No. 60001
        Clayborne S. Stone, Ark. Bar. No. 2003102

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1050 Seventeenth Street, N.W., Suite 800
Washington, DC  20036
(202) 508-1100

By:   Nathan Siegel, *pro hac vice*, nsiegel@lskslaw.com
        John B. O'Keefe, *pro hac vice*, jokeefe@lskslaw.com

*Counsel for Defendant Hachette Book Group*

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                          Chapter 7

Jessica Cutler,                                 Case No. 07-31459-5 (MCR)

                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Robert Steinbuch,                               Adv. Pro. 07-50064-5

                        Plaintiff,

            -against-                           AMENDED COMPLAINT

Jessica Cutler,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY

## JURISDICTION AND THE PARTIES

1.      This adversary proceeding is a core proceeding over which this Court has

jurisdiction under 28 U.S.C. §§157 and 1334.

2.      Venue is proper in this District and in this Court pursuant to 28 U.S.C. §1409(a).

3.      This adversary proceeding is brought pursuant to 11 U.S.C. §523(a)(6) to

determine the dischargeability of a debt.

4.      Defendant commenced this Chapter 7 case by the filing of a voluntary petition

under chapter 7 of Title 11 of the United States Code, 11 U.S.C. 101 et seq (the "Bankruptcy

Code") on May 30, 2007 (the "Filing Date"). Defendant is the debtor in this chapter 7 case.

Plaintiff is a creditor of defendant.

## BACKGROUND

5.  In May 2004, Defendant intentionally published a "blog," a publicly-available Internet site, on which she added and modified periodic entries from her Senate computer. She entitled the blog "Washingtonienne." Defendant's blog described in graphic detail her ongoing sexual relationships with six men, including Plaintiff.

6.  With this blog, Defendant willfully and maliciously caused widespread publication and publicity of private intimate facts concerning Plaintiff in a manner that would be deemed outrageous and highly offensive to an ordinary reasonable person of average sensibilities, subjecting Plaintiff to severe harm. These disclosures of private facts were willful and malicious exposures of the most intimate details of Plaintiff's life to the public, causing him harm. With this blog, Defendant also willfully and maliciously putting him in false light, causing him harm.

7.  Cutler's actions were willful and malicious and caused Plaintiff significant injury.

8.  On or about June 1, 2005, Defendants Cutler, Hyperion and Disney published a book with the same title as the blog, "Washingtonienne," explicitly based upon Plaintiff's private real life events.

9.  Defendant's contract with the book's publisher *required* the book to be based on her real-life blog.

10. According to Defendant Hyperion, the publisher of the book, the book is an "utterly unrepentant roman a clef exposing the scandalous truth. . . . [Defendant] uses her 'real life experience. . . for a sexy, semi-autographical novel that is sure to initiate a . . . game of Who's Who.'" Hyperion specifically advertised the book as being in "a witty, unapologetic voice, the novel's narrator . . . tells the story of . . . the staff counsel [i.e., Plaintiff] whose [sexual] taste[s] . . . she 'accidentally' leaks to the office."

11. This "accidental" leak—done when Defendant started to write about Plaintiff in her blog—was, as the quotes denote, intentional. This demonstrates willful and malicious intention.

12. Cutler willfully and maliciously transformed her blog into a book for her own profit at the intentional expense of Plaintiff.

13. Defendant willfully and maliciously harmed Plaintiff by publishing her book, constituting Invasion of Privacy (Public Disclosure of Private Facts, Misappropriation, False Light, and Intrusion Upon Seclusion) and Intentional Infliction of Emotional Distress. That is, Defendant willfully and maliciously caused widespread publication and publicity of private intimate facts concerning Plaintiff in a manner that would be deemed outrageous and highly offensive to an ordinary reasonable person of average sensibilities, subjecting Plaintiff to severe harm; Defendant willfully and maliciously misappropriated Plaintiff's likeness and identity; Defendant willfully and maliciously portrayed Plaintiff falsely; Defendant willfully and maliciously intruded upon Plaintiff's seclusion.

14. Defendant admits in the book: "My attitude up until this point was, 'Why *not* feed into it?' I didn't care if people knew my shit anymore, but I realized that it wasn't just *my* shit that people were interested in. Degrading myself was one thing—if a woman did it to herself, she was in control. But I was humiliating a bunch of other people along with me, in effect, *victimizing* them." This demonstrates willful and malicious intention.

15. Defendant says in her book about Plaintiff: "He was probably reading my blog right now, feeling as if he'd been duped. Surely, everyone I knew felt that way about me, because I really was a liar and a whore, and now I was exposed." This demonstrates willful and malicious intention.

16. The book says Plaintiff said to Defendant "'The latest rumor is that you and your

friends planned this whole thing. Is it true?'" The book says Defendant said "'It was beyond my control,' was all I could say, like that John Malkovich character from *Dangerous Liaisons.*" This admission demonstrates willful and malicious intention.

17. The book says plaintiff requested Defendant not to continue to be "pursuing any book or movie deals," as that would further harm Plaintiff. And Defendant says in the book that she responded "Why shouldn't I make money?" This admission demonstrates willful and malicious intention.

18. The Counsel for the U.S. Senate stated that Defendant had on her Senate Computer a document with the same title as the blog and the book, the *Washingtonienne,* again detailing sexual matters, that was dated a year *before* the blog was created and two years before the book was released. This demonstrates willful and malicious intention in the apparently long-time plan to create the Washingtonienne blog then book.

19. Cutler told *Playboy* "None of these people [identified in the blog] were elected officials, so they don't deserve the scrutiny. . . . [Otherwise,] I would have tried to cash in on that earlier." This demonstrates willful and malicious intention.

20. The District Court in the D.C. Action ruled that there is no legitimate public interest in the information about plaintiff's sex life and the information is not "newsworthy." Transcript of Motions Hearing Before the Honorable Paul L. Friedman United States District Judge, Wednesday, April 5, 2006, Page 52 line 22 to Page 54 line 14 ("The argument that the defendant makes that there is a public interest in this kind of information I just reject. . . . The argument that the blog was newsworthy . . . I just don't think carries the day here. . . . . Mr. Steinbuch's not a public figure. So, I just reject the notion that the relationship between the two of them was a matter of public concern or interest, particularly the details the sex act they performed is just --

just doesn't carry the day at all.  That's not a basis to dismiss.").

21. Cutler's actions were willful and malicious and caused Plaintiff injury.

## CONCLUSION

22. Accordingly, Plaintiff's claims against Debtor should be deemed non-dischargeable pursuant to §523(a)(6) of the Bankruptcy Code due to the willful and malicious injury by the Debtor to the Plaintiff.

**WHEREFORE,** Plaintiff requests judgment against the Debtor:

a.        Declaring the debt owed by the Debtor to Plaintiff to be non-dischargeable, pursuant to §523(a)(6) of the Bankruptcy Code;

b.        fees, costs and expenses; and

c.        such other and further relief this Court deems just and proper.

Dated:  June 17, 2009

_/s/Robert Steinbuch/x/_
Robert Steinbuch
6834 Cantrell Rd., #222
Little Rock, AR 72207